FILED

**IN THE UNITED STATES DISTRICT COURT** 2011 OCT -5 PM 5: 02
**FOR THE WESTERN DISTRICT OF TEXAS**
CLERK U.S. DISTRICT COURT
**(AUSTIN DIVISION)** WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | |
|---|---|
| AUSTIN LIFECARE, INC. §<br>Plaintiff, §<br>§<br>v. §<br>§<br>CITY OF AUSTIN, *a municipal* §<br>*corporation;* LEE LEFFINGWELL, *in* §<br>*his official capacity as the Mayor of* §<br>*Austin*; CHRIS RILEY, MIKE §<br>MARTINEZ, KATHIE TOVO, LAURA §<br>MORRISON, BILL SPELMAN, and §<br>SHERYL COLE, *in their official* §<br>*capacities as members of the Austin City* §<br>*Council*; and MARC OTT, *in his official* §<br>*capacity as City Manager of the City of* §<br>*Austin,* §<br>Defendants. § | CIVIL ACTION<br><br>Case No.:  **A11CA875 LY** |

_____

## VERIFIED COMPLAINT FOR
## DECLARATORY, INJUNCTIVE AND OTHER RELIEF

Plaintiff AUSTIN LIFECARE, Inc. (hereafter "LifeCare"), by and through their undersigned

attorneys, hereby complains against the above-captioned Defendants: the CITY OF AUSTIN

(hereafter the "City"), LEE LEFFINGWELL, in his official capacity as the Mayor of Austin, each

above-captioned member of the City Council of Austin (hereafter the "City Council") and MARC

OTT, the City Manager of Austin, in their official capacities, respectively, as follows:

### I.    INTRODUCTION

1.    This is a civil rights action commenced under applicable federal and state laws

challenging on its face, and as it applies to LifeCare, the constitutionality and lawfulness of

Chapter 10-9 of Title 10 of the Austin City Code, as enacted April 8, 2010 (effective April 19,

2010) by the Austin Council and signed by the Mayor of Austin, (Ordinance No. 20100408-027,

hereafter the "Ordinance").  A true and correct copy of the Ordinance is attached hereto as EXHIBIT A.

2.      By this Complaint, LifeCare seeks a declaratory judgment of its rights under federal and Texas law, nominal monetary compensation, attorneys fees and costs, and injunctive relief in the form of preliminary and permanent injunctions, barring Defendants, and all those in active concert with them, through the enforcement of this Ordinance, from continuing under penalty of criminal sanction to abridge LifeCare's rights to freedoms of speech, assembly and association, religion, and the equal protection of the laws, guaranteed to it by the First or Fourteenth Amendments to the United States Constitution and the laws of the United States, as well as the Constitution and laws of the State of Texas.

3.      The Ordinance unconstitutionally compels LifeCare under penalty of criminal sanction to post signage disclaiming to all of its clients, as each client first enters its facilities, that LifeCare does not refer or provide for abortion or for birth control devices regulated by the Federal Drug Administration (FDA). The First Amendment generally forbids the government from requiring private citizens to engage in government-dictated speech. "[F]reedom of thought and expression 'includes both the right to speak freely and the right to refrain from speaking at all.' *Wooley v. Maynard,* 430 U.S. 705, 714 . . . . 'The essential thrust of the First Amendment is to prohibit improper restraints on the *voluntary* public expression of ideas; it shields the man who wants to speak or publish when others wish him to be quiet.  There is necessarily, and within suitably defined areas, a concomitant freedom *not* to speak publicly, one which serves the same ultimate end as freedom of speech in its affirmative aspect.'(Citation omitted)." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 559 (1985). "The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public

mind through regulating press, speech and religion." *Thomas v. Collins*, 323 U.S. 516, 545 (1945). "The First Amendment mandates that we presume that speakers, not the government, know best both what they want to say and how to say it . . . . To this end, [t]he government, even with the purest of motives, may not substitute its judgment as to how best to speak for that of speakers and listeners; free and robust debate cannot thrive if directed by the government." *Riley v. National Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 791-790 (1988). Accordingly, government efforts to force speakers to convey government messages are subject to strict scrutiny, and are only permissible when the evidence before the government at the time of the challenged law's enactment demonstrates with the requisite specificity that the government's interest is "compelling" and narrowly tailored using "the least restrictive means." To justify a compelling government interest, the Court has recently emphasized the government must "identify an 'actual problem' in need of solving and justify the restriction of free speech as "actually necessary to the solution." *Brown v. Entm't Merch. Ass'n*, No. 08-1448, Slip Op., 2011 WL 2518809 (June 27, 2011) (citing *United States v. Playboy Entm't Groups, Inc.* 529 U.S. 803, 822-23 (2000) and *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992)). No such compelling evidence is present in this case, nor is this Ordinance narrowly tailored to do anything but substitute the government's preferred speech for LifeCare's free speech with which the Defendants apparently disagree.

4.    The Ordinance impermissibly violates LifeCare's constitutional rights under the First Amendment because the Ordinance singles out speech regarding one, and only one, subject—pregnancy—for special restrictions and financial penalties. The Ordinance is clearly content-based, and, therefore, unconstitutional, because its application is entirely governed by whether or not the speaker discusses a single regulated topic-pregnancy. "It is axiomatic that the

government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors of University of Virginia,* 515 U.S. 819, 828-29 (1995). While content-neutral speech restrictions can be permissible in certain circumstances, the Supreme Court has repeatedly stated that *content-based* restrictions of speech like those imposed by the Ordinance are *presumptively* unconstitutional. *R.A.V.*, 505 U.S. at 382.

5.     The Ordinance also engages in unconstitutional discrimination based upon the *viewpoint* of LifeCare's free speech, namely, LifeCare's viewpoint that it does not refer or provide for abortion or refer for birth control devices regulated by FDA. The Supreme Court has repeatedly ruled that viewpoint discrimination violates the First Amendment, stating: "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger,* 515 U.S. at 829. The text, history, operation, and publicly alleged justification for the Ordinance confirm that Defendants are unconstitutionally targeting speakers, like LifeCare, with a particular *viewpoint* with which Defendants disagree. The Ordinance, by its own express terms, applies only to *pro-life* pregnancy centers such as LifeCare that do not provide or refer for abortions, and thereby targets for speech regulation only one side of a contentious public, political debate based upon the *viewpoint* of the LifeCare's speech. The Ordinance is viewpoint-discriminatory because it does not apply to all discussions relating to pregnancy, nor does it apply to all discussions of pregnancy by speakers without medical licenses. Rather, it applies only to those discussions of pregnancy by a particular group of speakers, like LifeCare, who are thus regulated solely because they refuse to "refer or provide for abortion." By using a speaker's position on abortion to determine whether or not to regulate that speaker's speech, the law is impermissibly viewpoint-based. "We find no basis for the proposition that, in the context of political speech,

the Government may impose restrictions on certain disfavored speakers. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each." *Citizens United v. Federal Election Commission*, 558 U.S.__, 130 S. Ct. 876, 899 (2010). The Court has more recently said that the "First Amendment requires heightened scrutiny whenever the government," as Defendants did when enacting the Ordinance, "creates a regulation of speech because of disagreement with the message it conveys." *Sorrell v. IMS Pharmaceuticals*, 564 U.S. __, 131 S. Ct. 2653, 2664 (2011). "In the ordinary case," like this one, where purely non-commercial speech is being regulated, the Court has said, "it is all but dispositive to conclude that a law is content-based and, in practice viewpoint discriminatory." *Id.* (citing *R.A.V.*, 505 U.S. at 382 ("Content-based regulations are presumptively invalid.")). Even in the context of the regulation of generally less protected "commercial speech," the Court in *Sorrell* upheld an injunction against a state law in a case analogous to this one involving both a "content" and "viewpoint based" speech regulation where the government's "interest in burdening the speech . . . turns on nothing more than a difference of opinion" with speech and speakers disfavored by the government, and the government was not contending that the speaker's entire business was itself "false or misleading" or that the law itself was narrowly drawn to *only* "prevent false or misleading speech." *Id.*

6. The First Amendment, applicable to Defendants through the Fourteenth Amendment, provides, in relevant part: "Congress shall make no law…abridging…the right of the people peaceably to assemble . . . ." U.S. CONST., amend. I & XIV. Article 1, Section 27 of the TEXAS CONSTITUTION likewise provides that its "citizens shall have the right, in a peaceable

---

manner, to assemble together for their common good." The Ordinance imposes an unconstitutional burden on LifeCare's freedoms of association and assembly, insofar as it prohibits LifeCare's staff, in a peaceful manner, from freely meeting with anyone coming on to their premises unless and until LifeCare complies with the Ordinance.

7.      The Ordinance is also subject to strict judicial scrutiny because it is neither neutral nor generally applicable and it impermissibly targets LifeCare merely because Defendants apparently disagree with LifeCare's religiously-motivated speech and religious free exercise pertaining to abortion and certain forms of birth control. The First Amendment, applicable to Defendants through the Fourteenth Amendment, provides, in relevant part: "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof." *Id.* Article 1, Section 6 of the TEXAS CONSTITUTION also protects LifeCare's free exercise of religion, as follows: "No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion . . . ." The TEXAS RELIGIOUS FREEDOM RESTORATION ACT (hereafter "TRFRA") also provides that before Defendants may pass any ordinance that substantially "burdens" the free exercise of religion Defendants must bear the heavy evidentiary burden of not only demonstrating a "compelling government interest" but also showing that the ordinance is "the least restrictive means" to further that interest. TEX. CIV. PRAC. & REM. CODE § 110.001. Defendant's enactment of the Ordinance cannot survive this "strict scrutiny" because no compelling government interest of the "highest order" is protected by the Ordinance nor is any such interest advanced by "the least restrictive means." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).

8.      As if such a government-mandated, content and viewpoint-based speech regulation infringing upon LifeCare's freedoms of speech, association and free exercise of religion in violation of federal and state law were not bad enough, the Ordinance's government-mandated "disclaimer" forces LifeCare to make a statement that is simply untrue.   The Ordinance requires LifeCare to post a sign saying that it does not provide birth control services. In fact, LifeCare does provide education about abstinence.  Abstinence is a medically recognized means of birth control.  Indeed, in a section of its website describing "Types of Birth Control," the U.S. Department of Health and Human Services, Centers for Disease Control and Prevention lists abstinence and calls continuous abstinence "the only 100% effective way to prevent pregnancy."  See http://www.cdc.gov/reproductivehealth/unintendedpregnancy/contraception. htm.  LifeCare also generally "refers" for a "birth control service" for *married* women solely by advising them, along with their husbands, to seek "birth control" counseling from their doctor or pastor, rather than from LifeCare itself.

9.      In sum, in absence of substantial case-specific evidence applicable to LifeCare that the Ordinance constitutes the least restrictive means to achieve a compelling state interest of the highest order, the Constitutions and laws of the United States and Texas prohibit Defendants from singling out one side in an important public debate related to pregnancy by requiring LifeCare, and not others with opposing views, to post the government's message, particularly when that mandated message is simply untrue, unfairly discriminates between speakers based upon the content and viewpoint of LifeCare's message, violates LifeCare's right to the equal protection of the laws and substantially interferes with and burdens LifeCare's ability to freely exercise constitutionally protected rights of free speech, association and the free exercise of religion.

## II.    JURISDICTION AND VENUE

10.    The Court has original subject matter jurisdiction over the federal law claims for relief alleged herein (Claims One through Five) pursuant to 28 U.S.C. § 1331 as this case arises under the Constitution and laws of the United States and presents a federal question, and pursuant to 28 § 1343(a)(4), in that plaintiff seeks to secure equitable, monetary and other relief under an Act of Congress, specifically 42 U.S.C § 1983, which provides a cause of action for violation of LifeCare's federal civil rights by persons, like Defendants, acting under color of state law.  The Court has supplemental jurisdiction over the state law claims alleged herein (Claims Six through Ten) pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal law claims alleged in the action that they form part of the same case or controversy under Article III of the United States Constitution.  The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.  The Court is authorized to issue the requested preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65, and to award Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and damages pursuant to 42 U.S.C. § 1983.

11.    Venue is proper in the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b).  Defendants are present in the Western District of Texas, and all of the events giving rise to these claims occurred in this District, including the passage of the Ordinance and application of the Ordinance to LifeCare.

12.    This Court has authority to declare the rights and legal relations of the parties and to order further relief, pursuant to 28 U.S.C. §§ 2201–02, because this is a case of actual controversy within this Court's jurisdiction wherein LifeCare is suffering actual and irreparable injury to its constitutional rights.

13.     Defendants are subject to this Court's personal jurisdiction due to their presence and activities within the Western District of Texas, Austin Division.

### III.     PARTIES

**A.     Plaintiff**

14.     Plaintiff LifeCare is a charitable, not-for-profit corporation duly incorporated under the laws of Texas, exempt from federal taxation by Section 501(c)(3) of the Internal Revenue Code, with its principal place of business at 1215 West Anderson Lane, Austin, Texas, where it provides pregnancy-related counseling and other services without charge to its clients under the supervision of its chief executive officer and executive director, Pamela Cobern, who is competent, knowledgeable and duly authorized by LifeCare to verify this Complaint.

15.     Since 1984, LifeCare has been serving the Austin community and each of its clients confidentially and free of charge.

16.     LifeCare is dedicated to providing truthful, compassionate and trustworthy service to the Austin community, and each of its clients, by promoting positive solutions to the challenges surrounding unplanned pregnancies through prevention, intervention, and restoration. LifeCare seeks to protect the physical, emotional and spiritual lives of women and their unborn children, by providing pregnant women services including education about pregnancy, about abortion procedures, and about adoption and parenting as well as providing limited ultrasound services under the direct supervision of a physician, childbirth and parenting classes, mentors and material assistance (clothing, baby items, etc.). Help is available 24-hours-a-day through a confidential help line. LifeCare offers support for the spiritual, emotional, and psychological effects that can occur after an abortion experience or past sexual abuse, including a Bible study and support group led by peer counselors trained to guide and support men and women through

the unique healing from an abortion experience, and educational conferences for men, women, counselors, clergy, and families.

17.     LifeCare is a pro-life, Christian, faith-based non-profit organization that is supported by and partners with faith-inspired individuals and churches from several Christian denominations.

18.     All of LifeCare's speech and services are carried out in furtherance of its religious and moral views in support of the dignity of human life (and therefore against its destruction in abortion) and in order to glorify God through Jesus Christ.

19.     Based upon its moral conscience and its religiously-motivated belief in the sanctity of human life and dignity from conception until natural death, as well as upon LifeCare's understanding of the physical, spiritual, psychological and emotional risks of induced abortion, LifeCare does not provide or refer for abortion or abortifacients, but is committed to offering accurate information about abortion procedures and risks..

20.     LifeCare does provide information on abstinence, which is a recognized form of birth control.  LifeCare does not provide or specifically refer for any other forms of birth control, including to providers of FDA-approved birth control drugs and medical devices.  LifeCare does not recommend, provide, or refer single women for contraceptives.  LifeCare does advise "married women seeking contraceptive information to seek counsel, along with their husbands, from their pastor and/or physician."

**B.     Defendants**

21.     Defendant City Council of Austin (the "City Council") is a municipal corporation located in this federal district, and operates with all the powers granted to cities by the statutes and Constitution of the State of Texas, according to Section 3 of Article 1 of the City's charter.

22.     Defendant City of Austin (the "City") is a municipality existing under the laws of Texas, and may be served, pursuant to Tex. Civ. Prac. & Rem. Code §17.024, by serving its City Secretary at 301 West Second Street, Third Floor, Austin, Texas, 78701.

23.     Defendant Lee Leffingwell is Mayor of Austin and is responsible for the execution of all city ordinances and general supervision of all municipal officers and agencies under Texas Local Government Code § 22.042(a). Mayor Lee Leffingwell is sued in his official capacity.

24.     The defendant City Council Members Chris Riley, Mike Martinez, Kathie Tovo, Laura Morrison, Bill Spelman, and Sheryl Cole and City Manager Marc Ott are made parties to this lawsuit solely in their official capacities as proper parties to the claims asserted herein and/or as officers to whom authority was given to ensure compliance with and enforcement of the Ordinance.

## IV.     FACTUAL ALLEGATIONS

### A.     The Ordinance

25.     On or about April 8, 2010, after no more than a 30 minute hearing wherein its rules were waived and discussion was limited by the presiding officer to "15 minutes per side," and no evidence of any unlawfully deceptive or misleading conduct by LifeCare was presented, the Austin City Council on a 7-0 vote passed Ordinance 20100408-027, "An Ordinance Amending the City Code to Add Chapter 10-9 to Require Signs in Certain Pregnancy Counseling Facilities; Creating an Offense and Imposing a Penalty," to create special speech rules for "Limited Service Pregnancy Centers." Council Member defendant William Spelman sponsored the Ordinance. Council Member defendant Laura Morrison and Mayor *Pro Tem* defendant Mike Martinez co-sponsored the Ordinance. Then City Attorney David Allan Smith approved the

Ordinance.  City Clerk Sherley A. Gentry attested to and Mayor Pro Tem Martinez signed the Ordinance into law on behalf of Mayor Lee Leffingwell.  The Ordinance took effect on or about April 19, 2010.

26.      As set forth in EXHIBIT A, the Ordinance defines "Comprehensive Birth Control Services" as "*all* drugs and medical devices that have been approved by the U.S. Food and Drug Administration for birth control."  § 10-9-1(B) (emphasis added).

27.      As set forth in EXHIBIT A, the Ordinance defines a "Limited Service Pregnancy Center" as "an organization or facility that:

(i)      provides pregnancy counseling or information as its primary purpose, either for a fee or as a free service;
(ii)     does not provide Abortions or make referrals to Abortion providers;
(iii)    does not provide Comprehensive Birth Control Services or make referrals for Comprehensive Birth Control Services, *and*
(iv)     is not licensed or certified by the state or federal government to provide medical or health care services."  § 10-9-1(C) (emphasis added).

The definition of 'Limited Service Pregnancy Center' expressly includes persons who offer such services and information for free.

28.      The Ordinance requires the "Owner or Operator of a Limited Service Pregnancy Center," like LifeCare, to "prominently display, at the entrance of the Center, two black and white signs, one in English and one in Spanish, that state as follows: 'This center does not provide abortions or refer to abortion providers.  This center does not provide or refer to providers of U.S. Food and Drug Administration approved birth control drugs and medical devices.'"  §10-9-2(A).  Each sign must be at least eight and one-half inches by eleven inches and text must be in a font size of at least 48 point."  § 10-9-2(B).

---

29.     The FDA has approved emergency contraception, also known as the "morning after pill," as well as "Ella," as forms of birth control, which LifeCare is informed and believes can under some circumstances operate as an abortifacient.

30.     A violation of the Ordinance is a "Class C Misdemeanor, punishable by a fine of not less than $250 for the first offense, not less than $350 for the second offense, and not less than $450 for a third offense." § 10-9-3. The Ordinance does not require a culpable mental state.

31.     As indicated in the "Additional Backup Material" (*see* online RECORD OF APRIL 8, 2010 AUSTIN CITY COUNCIL MEETING at http://www.ci.austin.tx.us/cityclerk/edims/2010/20100 408-reg.htm#027/ including pertinent excerpts from the relevant Agenda Item #27 pertaining to the adoption of the Ordinance attached hereto as EXHIBIT B), the only evidence apparently relied upon by Defendants in adopting the Ordinance is a 2009 Annual Report by the abortion-proponent NARAL Pro-Choice Texas Foundation, entitled "Taxpayer Financed Crisis Pregnancy Centers in Texas: A Hidden Threat to Women's Health" (the "NARAL Report", attached hereto as EXHIBIT C) and a July 2006 "Minority Staff Report" prepared for pro-abortion Representative Henry A. Waxman by the Special Investigations Division of the United States House of Representatives Committee on Government Reform (the "Waxman Report", attached hereto as EXHIBIT D), both of which exhibit hostility towards pro-life pregnancy centers and religious viewpoints against abortion. These reports contain no evidence specifically pertaining to LifeCare, much less any "evidence" of any kind demonstrating any unlawful or deceptive misconduct by LifeCare, nor is 'evidence' of any such kind found in this material or any other testimony submitted in support of the Ordinance.

32.     The patently-biased NARAL Report faults pregnancy centers for having "the express purpose of persuading pregnant teenagers and women seeking services for unexpected

pregnancies to opt for motherhood and adoption" and accuses them of having "the express purpose of interfering with pregnant teenagers and women who are seeking comprehensive women's healthcare." III.b.i., IV.a.  The NARAL Report calls pregnancy centers "biased" and "anti-choice," and states that their "primary purpose . . . is to advance an ideological, political, and religious agenda."  Appendices I.  It accuses pregnancy centers of having a "controversial history" and a "religious, anti-choice mission" such as "shar[ing] God's gift of eternal life through Jesus Christ with women in crisis pregnancies . . . by ministering to the physical, emotional, and spiritual needs of women . . . ."  Id.

33.     The equally-biased Waxman Report criticizes pregnancy centers because they "are virtually always pro-life organizations whose goal is to persuade teenagers and women with unplanned pregnancies to choose motherhood or adoption" and refers to one center's religious mission in a demeaning manner.  Waxman Report 1.  It concludes by accusing pregnancy centers of engaging in "tactic[s] [that] may be effective in frightening pregnant teenagers and women and discouraging abortion."  Waxman Report 14.

34.     The ordinance was not only based on NARAL reports, it was developed by NARAL.  This is documented in statements City officials made in NARAL's own YouTube video "Exposing Crisis Pregnancy Centers One City at a Time," uploaded by the account NARALProChoiceNY, and available at http://www.youtube.com/watch?v=Tpya05pQGAQ. The video explains how Austin's ordinance and other similar ordinances around the country are part of NARAL's Urban Initiative, started at a summit in 2008 in New York City and continued at a summit in Denver in 2009.  After the Denver summit, NARAL's political director and an Austin NARAL "contact" decided to push legislation in Austin.  This Austin contact is identified as Heidi Gerbracht, policy director for Councilmember Bill Spellman.  She appears in the video

and says that, "the conversation at the Denver Urban Initiative was fundamental to us getting our crisis pregnancy ordinance started and then passed." She admits that upon returning from the Denver initiative she "immediately started working on an ordinance for Austin." Thus Defendants admit that this ordinance is the creation of NARAL and pro-abortion activists, and of the Defendants' viewpoint-driven cooperation with the same. There is absolutely no evidence that, when developing the Ordinance, any attempt was made to seek information or input from any sources other than pro-abortion groups who are already opposed to the work of pro-life pregnancy centers. There is also no evidence that any attempt was made to investigate the state of Austin's pro-life pregnancy centers.

35.     During the April 8, 2010 City Council meeting, testimony was presented on behalf of LifeCare that it provides accurate, state approved information on abortion and are otherwise always truthful with clients about the services they offer, but the Ordinance's disclaimer would substantially burden LifeCare's right to speak with their clients about their situations and also about the options available to them.

36.     During the April 8, 2010 City Council meeting, those testifying against the Ordinance inquired whether any specific evidence exists as to the Ordinance's necessity. No evidence was presented during the meeting indicating that LifeCare, or any of the other pregnancy centers in Austin, has been untruthful or misleading about the services they offer.

37.     During the April 8, 2010 City Council meeting, two attorneys testified against the Ordinance and questioned its constitutional legality. They stated that the Ordinance would place a substantial burden on religious ministries and that it mandates compelled speech in violation of the United Stated and Texas Constitutions. One attorney testified that a similar ordinance was being challenged in federal district court in Maryland.

38.     Despite the above-described unrebutted testimony and the lack of any evidence justifying its enactment, the City Council unanimously passed the Ordinance.  A video of the City Council's proceedings leading to the City's enactment of the Ordinance can be found at the City's website at http://www.ci.austin.tx.us/cityclerk/edims/2010/20100408-reg.htm.

39.     The Ordinance does not apply to all speakers or organizations that primarily provide counseling or information about pregnancy services or pregnancy options.

40.     An organization or facility that provides pregnancy counseling or information as its primary purpose, and that provides referrals for abortions but does not provide referral information about childbirth, is not covered by the Ordinance.

41.     An organization or facility that provides pregnancy counseling or information as its primary purpose, and provides referrals for abortion but does not provide referrals for pro-life pregnancy centers, is not covered by the Ordinance.

42.     The Ordinance does not require centers performing or referring for abortion to post any kind of disclaimer, and it does not require centers that provide or refer for comprehensive birth control services to post any kind of disclaimer.

43.     The Ordinance requires only organizations and facilities that refuse to provide or refer for abortion and "Comprehensive Birth Control Services" to engage in government-drafted "disclaimers" if they wish to speak about pregnancy by providing pregnancy counseling or information as their primary purpose.

44.     If an organization that is not a licensed medical facility under the ordinance provides pregnancy counseling or information as its primary purpose, but *does not* perform or refer for abortion or comprehensive birth control services, it is subject to the Ordinance's requirements.

45.     If an organization that is not a licensed medical facility under the ordinance provides pregnancy counseling or information as its primary purpose, and *does* refer for abortion or comprehensive birth control services, it is exempt from the Ordinance's requirements.

46.     The Ordinance does not reach speakers on a wide variety of life-and-death healthcare issues on which people have varying viewpoints, such as vaccines, addictions, and cancer treatments.  It reaches only speakers primarily dealing with one topic - pregnancy.

47.     Even within the context of pregnancy, the Ordinance does not reach the vast majority of sources pregnant women are likely to consult, such as books, websites, friends, family members, teachers, guidance counselors, or religious leaders—all of whom may have their own biases, opinions, information, and misinformation about pregnancy and abortion.

48.     There is no requirement of a finding that a "limited service pregnancy center" has committed any wrongdoing whatsoever to be regulated by the Ordinance.

49.     Defendants had no evidence of any wrongdoing by LifeCare (or, for that matter, any other center within the City of Austin) at the time the Ordinance was enacted.

**B.      LifeCare**

50.     Since 1984 LifeCare has operated in Austin in general conformance with what the Ordinance now defines as a "Limited Service Pregnancy Center."

51.     LifeCare provides no medical services, and does not claim to do so, though LifeCare does provide limited ultrasound services under the direct supervision of a licensed physician.

52.     LifeCare as an entity is not licensed or certified by the Texas or federal governments to provide medical or health care services.

53.     The counseling, information and services provided and/or facilitated by LifeCare are highly dependent on the development of personal relationships with the women it serves. Forcing LifeCare to begin these sensitive conversations with government-mandated disclaimers, including the disclaimer mandated in the Ordinance, interferes with LifeCare's discussions with these women and its right to freely speak to and associate with these women in the manner, the timing, the context, and the emphasis it deems necessary to convey its message.

54.     LifeCare does not sell any products or services and does not charge any person its serves for its counseling, information, services.

55.     LifeCare does not engage in any commercial transactions.

56.     LifeCare's providing of counseling, information and services is not solely related to any economic motive benefitting LifeCare.

57.     On its face, the Ordinance compels non-commercial speakers, like LifeCare, to deliver the government's messages under threat of criminal sanction for failure to do so.

58.     The Ordinance explicitly regulates non-commercial speech that is fully protected by the Constitution.

59.     LifeCare wishes to engage in its non-commercial communications and related services about pregnancy without being forced to post the Ordinance's mandated disclaimers.

60.     By requiring disclaimers, the Ordinance compels LifeCare to speak in violation of its rights to free speech and association under the United States and Texas Constitutions.

61.     The existence of the Ordinance imposes a prior restraint and unconstitutional "chill" on LifeCare's speech.

62.     Although LifeCare provides information and education on abstinence, the Ordinance requires LifeCare to post a disclaimer that implies that it does not offer birth-control

services.  The Ordinance thus compels LifeCare to make a false statement and/or to deliver the implied message that abstinence is not legitimate "birth-control."

63.     To avoid being covered by the Ordinance, LifeCare would either have to cease engaging in its primary purpose to speak about pregnancy, or provide or refer for abortions or comprehensive birth control services in violation of its sincerely-held religious belief that it is morally wrong to provide or refer for an elective abortion or to for birth control methods other than abstinence, or obtain a medical license from Texas or the federal government just so it can engage in its desired speech about pregnancy.

64.     By requiring a disclaimer that LifeCare does not provide or refer for abortions, the Ordinance compels LifeCare to deliver the implied message that these services are available elsewhere, should be considered, and are important enough that they deserve disclaimers in the form of the Ordinance's signs.  The Ordinance requires LifeCare to emphasize and legitimize such services in violation of Plaintiff's moral, ideological, political, and religious beliefs.

65.     LifeCare's opposition to abortion arises in central part from its sincerely-held religious and moral beliefs.

66.     LifeCare's charitable outreach to and personal moral discussion with pregnant women in need are matters of religious exercise and are based in part on LifeCare's sincerely-held religious beliefs.

67.     By depriving LifeCare of its right to speak about pregnancy and family planning matters on its own terms and in its own way, and by subjecting LifeCare to regulations and potential fines solely because of its opposition to abortion and to specific referral for comprehensive birth control services, the Ordinance places a substantial burden on LifeCare's moral conscience, religious free exercise and sincerely-held religious beliefs in violation of the

Free Exercise Clause of the First Amendment to the United States Constitution, Article 1, Section 6 of the Texas Constitution, and the Texas Religious Freedom Restoration Act.

68.    The existence of the Ordinance imposes a chill on Plaintiff's free exercise of religion.

69.    Fearing the penalties threatened by the Ordinance if it does not succumb to the Ordinance's compelled speech, LifeCare has to date reluctantly complied with the Ordinance, but desires to now be relieved of the unconstitutional infringements of its rights under federal and Texas law that is imposed upon it by compliance with the Ordinance.

70.    On April 22, 2011, in the wake of two federal district court decisions, further described in paragraphs 75 and 76 below, finding unconstitutional and enjoining two similar laws enacted by Montgomery County and the City of Baltimore, respectively, LifeCare's legal counsel hand-delivered a letter, a true and correct copy of which is attached and incorporated herein as EXHIBIT E, to Defendant City of Austin's City Attorney, Karen Kennard, requesting Defendant's "position as to whether upon complaint or otherwise the City Attorney intends to ever enforce the Ordinance in light of its patent unconstitutionality." On September 16, 2011, in the wake of yet another federal district court decision, further described in paragraph 77 below, finding unconstitutional and enjoining a similar law enacted by New York City Council, LifeCare's legal counsel again hand-delivered a letter to Defendant City of Austin's City Attorney, Karen Kennard, again requesting Defendant's "position as to whether upon complaint or otherwise the City Attorney intends to ever enforce the Ordinance in light of its patent unconstitutionality." The City Attorney never responded to either of these letters, true and correct copies of which are attached and incorporated herein as EXHIBIT E.

71.     The Ordinance, its enforcement, and all actions alleged herein have occurred under color of state law.

72.     The Ordinance and its threat of enforcement irreparably harm LifeCare by infringing upon LifeCare's First and Fourteenth Amendment rights to freedom of speech, freedom of association, free exercise of religion, and equal protection, as well as LifeCare's similar rights under the Texas Constitution and the TRFRA.

73.     Without preliminary and permanent injunctive and declaratory relief, the Ordinance will continue to impose irreparable harm on the constitutional rights of LifeCare as described herein.

74.     LifeCare has no adequate remedy at law, is likely to prevail on the merits of its claims in this action, and submits that enjoining the enforcement of the Ordinance best serves the public interest.

**C.     Other Related Federal Court Decisions**

75.     In *O'Brien v. Mayor and City Council of Baltimore,* 768 F. Supp. 2d 804 (D. Md. 2011), the United States District Court for the District of Maryland ruled that a nearly identical ordinance compelling only pro-life pregnancy resource centers to post a sign in their waiting rooms amounted to unlawful viewpoint discrimination in violation of the First Amendment of the United States Constitution, and on January 31, 2011, the court permanently enjoined the enforcement of this ordinance.

76.     In *Centro Tepeyac v. Montgomery County*, No. DKC 10-1259, 1 WL 915348 (D. Md. Mar. 15, 2011), the United States District Court for the District of Maryland preliminarily enjoined the enforcement of part of a similar ordinance compelling pregnancy resource centers to post a sign in their waiting rooms.  The court found that the plaintiff, a pregnancy resource

center, was likely to succeed on its claim that part of the sign amounted to unlawful compelled speech in violation of the First Amendment.

77.    In *Evergreen Ass'n v. City of New York* (11-Civ-2055) and *Pregnancy Care Center of New York v. City of New York* (11-Civ-2342), 2011 WL 2748728 (S.D.N.Y. July 13, 2011), another similar ordinance was enjoined in its entirety, this one enacted by the New York City Council requiring similar disclosures regarding PRCs and their services with respect to whether they provide or refer for abortion and birth control.

78.    All three courts found that pro-life pregnancy centers are not engaged in commercial or professional speech and that strict scrutiny applies to the compelled speech ordinances.

## V.    CLAIMS FOR RELIEF

### CLAIM ONE: VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION (COMPELLED GOVERNMENT SPEECH AND COMPELLED FALSE SPEECH) AGAINST ALL DEFENDANTS

79.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

80.    The First Amendment to the UNITED STATES CONSTITUTION provides, in relevant part: "Congress shall make no law . . . abridging the freedom of speech."

81.    The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

82.    The Ordinance unconstitutionally restricts LifeCare's rights of free speech which includes the right to refrain from speaking and the right to refuse to speak a government-dictated message.

---

83.     The Ordinance unconstitutionally forces LifeCare, on pain of government penalty, to engage in government disclaimers that LifeCare would not otherwise post.

84.     The Ordinance requires LifeCare to post a misleading message regarding birth control. LifeCare provides information on abstinence, a recognized form of birth control. LifeCare also advises married women seeking contraceptive information to seek counsel, along with their husbands, from their pastor and/or physician.  The Ordinance forces LifeCare to deliver the implied messages that (1) they do not provide birth control information, (2) abstinence is not a legitimate form of birth control, and (3) they do not provide advice to married women seeking birth control information to seek counsel, along with their husbands, from their pastor and/or physician.

85.     The Ordinance mandates the timing, context, size, emphasis and content of the Centers' speech on abortion and birth control.

86.     Because the Ordinance compels speech, it is subject to strict scrutiny and cannot be upheld unless at the time of its enactment the Ordinance advanced a compelling governmental interest in a narrowly tailored way and by the least restrictive means.

87.     The Ordinance does not promote any legitimate, much less compelling, governmental interest, and Defendants lacked any evidence sufficient to demonstrate such an interest.

88.     The Ordinance is not tailored at all, much less narrowly tailored, to further any sufficient governmental interest, it does not do so by the least restrictive means, and Defendants have ample alternative channels to achieve any alleged interest without the Ordinance's burdens on Plaintiff's speech.

89.     Therefore, the Ordinance and Defendants' enactment and enforcement thereof unconstitutionally infringe on LifeCare's rights, thereby entitling LifeCare, pursuant to 42 U.S.C. § 1983, to the relief requested below.

## CLAIM TWO: VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION (CONTENT- AND VIEWPOINT- BASED DISCRIMINATION) AGAINST ALL DEFENDANTS

90.     LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

91.     The Ordinance unconstitutionally discriminates against LifeCare's speech on the basis of its content because the Ordinance only regulates entities, like LifeCare, that speak about the topic of pregnancy.

92.     The Ordinance is expressly content-based—if LifeCare wished to discuss any subject on earth other than pregnancy, the Ordinance would not apply.  "Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. at 382.

93.     The Ordinance is also content-based by mandating certain content in their speech through required written disclosures about the availability of abortion, abortion referrals, non-abstinence or family planning based birth control, or referrals for such birth control.

94.     The Ordinance unconstitutionally imposes a content-based restriction on LifeCare's speech by focusing its disclosures on only a select list of matters including abortion and birth control but not also requiring such specific disclosures about a variety of abortion alternatives and the life of the unborn child.

95.     The Ordinance also unconstitutionally restricts LifeCare's speech on the basis of the viewpoint of Plaintiff's speech against abortion and referral for comprehensive birth control. The Ordinance explicitly only applies its restrictions on speakers with a viewpoint that does not

provide or refer for abortion and comprehensive birth control services, but not on entities that are willing to provide or refer for such activities.

96.     All services, information and material assistance that LifeCare offers are inextricably intertwined with and offered in furtherance of their viewpoint of non-judgmental support for abortion-alternatives and opposition to abortion.

97.     Organizations that provide or make referrals for abortions or all government-approved forms of birth control are not subject to any disclaimers or criminal penalties under the Ordinance.

98.     The Supreme Court has made it clear that such viewpoint discrimination violates the First Amendment: "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

99.     The speech compelled by the Ordinance imposes a contrary viewpoint and a pall over LifeCare's discussions with pregnant women, by suggesting in the timing, context, and emphasis of the mandated disclosures that abortion and certain forms of birth control specifically are so important that LifeCare is engaging in a practice that is substandard by not providing or referring for them, and therefore that LifeCare must remediate their practice by the mandated and prominent disclosures.

100.     Because the Ordinance infringes LifeCare's speech on the basis of its content and LifeCare's viewpoint, it is subject to strict scrutiny.

101.     The Ordinance does not promote any legitimate, much less compelling, governmental interest, and Defendants lacked any evidence sufficient to demonstrate such an interest.

---

102.    The Ordinance is not tailored at all, much less narrowly tailored, to further any sufficient governmental interest, it does not do so by the least restrictive means, and Defendants have ample alternative channels to achieve any alleged interest without the Ordinance's content- and viewpoint-based burdens on Plaintiff's speech.

103.    Therefore the Ordinance and Defendants' enactment and enforcement thereof unconstitutionally infringe on LifeCare's rights, thereby entitling LifeCare, pursuant to 42 U.S.C. § 1983, to the relief requested below.

## CLAIM THREE: VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION (FREEDOM OF ASSEMBLY & ASSOCIATION) AGAINST ALL DEFENDANTS

104.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

105.    The First Amendment to the UNITED STATES CONSTITUTION provides, in relevant part: "Congress shall make no law . . . abridging . . . the right of the people to peacefully assemble."

106.    The Ordinance imposes an unconstitutional burden on LifeCare's freedoms of association and assembly, insofar as it prohibits LifeCare's staff from freely meeting with pregnant women for the purpose of providing its counseling and information unless and until LifeCare complies with the Ordinance.

107.    Defendants have no legitimate or compelling governmental interest in furtherance of the Ordinances burden of LifeCare's free association and assembly.

108.    The Ordinance's burden on LifeCare's free association and assembly is not sufficiently or narrowly tailored in the least restrictive manner to serve such an interest.

109.    LifeCare is unconstitutionally burdened and chilled in its free association and assembly by the enactment of the Ordinance and its threat of criminal sanctions, and will continue to be so burdened and chilled without declaratory and injunctive relief insofar as LifeCare is being irreparable injured and has an inadequate remedy at law.

110.    Therefore the Ordinance and Defendants' enactment and enforcement thereof unconstitutionally infringe on LifeCare's rights, thereby entitling LifeCare, pursuant to 42 U.S.C. § 1983, to the relief requested below.

## CLAIM FOUR: VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION (FREEDOM OF EXERCISE OF RELIGION) AGAINST ALL DEFENDANTS

111.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

112.    The First Amendment to the UNITED STATES CONSTITUTION provides, in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."

113.    The Ordinance compels LifeCare to violate its sincerely-held religious beliefs against providing or referring for abortion and comprehensive birth control services.

114.    The Ordinance is not neutral and generally applicable, and it intentionally imposes a substantial burden on LifeCare's ability to serve women pursuant to its sincerely-held religious beliefs.

115. By their reliance while enacting the Ordinance upon only reports showing hostility toward LifeCare's -held religious beliefs opposing abortion and certain forms of birth control, Defendants have indicated of the Ordinance's purpose of substantially burdening the free exercise and expression of such religious viewpoints.

VERIFIED COMPLAINT

116.    The Ordinance unconstitutionally imposes a substantial burden on LifeCare's sincerely-held religious beliefs, in that it deprives LifeCare of its right to the free exercise of religion and exposes it to special regulation and fines as a result of its sincerely-held religious beliefs.

117.    The Ordinance imposes an unconstitutional burden on LifeCare's free exercise of religion and, without declaratory and injunctive relief, will continue to do so thereby causing LifeCare on ongoing irreparable injury for which there is no adequate remedy at law.

118.    The Ordinance violates LifeCare's right to free exercise of religion.  It is subject to strict scrutiny.

119.    The Ordinance does not promote any legitimate, much less compelling, governmental interest, and Defendants lacked any evidence sufficient to demonstrate such an interest.

120.    The Ordinance is not tailored at all, much less narrowly tailored, to further any sufficient governmental interest, it does not do so by the least restrictive means, and Defendants have ample alternative channels to achieve any alleged interest without the Ordinance's content- and viewpoint-based burdens on Plaintiff's speech.

121.    Accordingly, the Ordinance violates LifeCare's religious freedoms protected by the First Amendment of the United States Constitution thereby entitling LifeCare, pursuant to 42 U.S.C. § 1983, to the relief requested below.

### CLAIM FIVE: VIOLATION OF FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION (EQUAL PROTECTION) AGAINST ALL DEFENDANTS

122.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

123.    Section 1 of the Fourteenth Amendment to the UNITED STATES CONSTITUTION provides, in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

124.    The Ordinance purports to regulate the speech and interactions of LifeCare by virtue of LifeCare's refusal to refer for or provide abortions and certain forms of birth control.

125.    The Ordinance subjects LifeCare—but not other, similarly situated entities such as abortion performing or referral facilities that provide information and counseling about pregnancy—to severe criminal and financial penalties, interference with free speech, and compelled speech.

126.    The Ordinance imposes a penalty on LifeCare—but not other, similarly situated entities such as abortion performing or referral facilities that provide information and counseling about pregnancy—in the form of reduced speech rights and exposure to regulation and fines for Plaintiff's refusal to provide or refer for abortions.

127.    If LifeCare simply agrees to refer for abortions and additional methods of birth control, the restrictions of the Ordinance would be inapplicable.

128.    As such, the Ordinance violates LifeCare's Fourteenth Amendment guarantees of equal protection based on LifeCare's exercise of the fundamental rights of free speech and free exercise of religion, and based upon the suspect classification between speakers of a different viewpoint.  It is therefore subject to strict scrutiny.

129.    The Defendant passed the Ordinance based on animus toward pregnancy centers that advocate alternatives to abortion.  Ordinances based on animus fail even rational basis

review, much less strict scrutiny review.  Subjecting pregnancy centers that advocate abortion alternatives, and not those that advocate in favor of abortion, to compelled disclosures and criminal sanctions fails rational basis review.

130.    The Ordinance cannot satisfy any level of review, since it does not advance any ration much less compelling government interest, it does not do so in a way tailored at all, much less narrowly tailored, to such an interest, and it does not do so in the least restrict means available.

131.    Accordingly, the Ordinance violates LifeCare's equal protection rights protected by the Fourteenth Amendment of the United States Constitution thereby entitling LifeCare pursuant to 42 U.S.C. § 1983 to the relief requested below.

### CLAIM SIX: VIOLATION OF ARTICLE 1, SECTION 8 OF THE TEXAS CONSTITUTION (FREEDOM OF SPEECH,) AGAINST ALL DEFENDANTS

132.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

133.    Section 8, Article 1 of the TEXAS CONSTITUTION states that, "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press."

134.    For similar reasons described above that the Ordinance violates the guarantee of the right to free speech under the United States Constitution, the Ordinance also violates the guarantee to the liberty of speech in the Texas Constitution.

135.    Therefore, LifeCare is entitled to the relief requested below.

## CLAIM SEVEN: VIOLATION OF ARTICLE 1, SECTION 6 OF THE TEXAS CONSTITUTION (FREEDOM OF RELIGION) AGAINST ALL DEFENDANTS

136.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

137.    Section 6 of Article 1 of the TEXAS CONSTITUTION provides that, "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences.  No man shall be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent."

138.    As detailed above, the services and speech that LifeCare engages in is a result of their sincerely-held religious beliefs.  The burdens that the Ordinance places on those beliefs and speech infringe upon Plaintiff's right to worship according to its own dictates.

139.    Furthermore, the speech compelled by the Ordinance effectively constitutes maintenance of ministry against LifeCare's consent.

140.    For similar reasons described above that the Ordinance violates the guarantee of the right to the free exercise of religion under the United States Constitution, the Ordinance violates the guarantee to the liberty of worship in the Texas Constitution.

141.    Therefore, LifeCare is entitled to the relief requested below.

## CLAIM EIGHT: VIOLATION OF THE TEXAS RELIGIOUS FREEDOM RESTORATION ACT (TEX. CIV. PRAC. & REM. CODE, §§ 110.001 ET SEQ.) AGAINST ALL DEFENDANTS

142.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

143.    Section 110.003 of the TEXAS RELIGIOUS FREEDOM RESTORATION ACT in pertinent part provides: "a government agency may not substantially burden a person's free exercise of religion, [unless] . . . the government agency demonstrates that the application of the

VERIFIED COMPLAINT

burden to the person: (1) is in furtherance of a compelling governmental interest;  and  (2)  is the least restrictive means of furthering that interest."

144.    LifeCare is a religious organization with a Statement of Faith to which all of LifeCare's Board members, staff and volunteers subscribe.

145.    The Ordinance substantially burdens LifeCare's ability to freely exercise its sincerely-held religion beliefs as it prefers.

146.    As described above, LifeCare's service and speech to the women of Austin encompass the exercise of sincerely-held religious beliefs.

147.    LifeCare's refusal to provide or refer for abortion and certain methods of birth control are directly tied to its religious beliefs.

148.    As described above, LifeCare is also are motivated by sincere religious beliefs that it must reach women and families facing unplanned pregnancies with the gospel of Jesus Christ through their provision of pregnancy counseling and information and related services, and in the manner and form inconsistent with the Ordinance's compelled disclosures.  LifeCare believes that the Bible and church doctrine are unequivocal that human life begins at conception; they further believe that abortion destroys innocent human life, degrades women, and destroys families.

149.    The Ordinance substantially burdens the LifeCare's free exercise of religion by undermining them from reaching clients with their religious messages, and does so in violation of TRFRA for failing to be narrowly tailored to serve a compelling governmental interest by the least restrictive means.

150.    Therefore, LifeCare is entitled to the relief requested below.

## CLAIM NINE: VIOLATION OF ARTICLE. 1, SECTION 27 OF THE TEXAS CONSTITUTION (FREEDOM OF ASSEMBLY & ASSOCIATION) AGAINST ALL DEFENDANTS

151.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

152.    Section 27 of Article 1 of the TEXAS CONSTITUTION in pertinent part provides that "The citizens shall have the right, in a peaceable manner, to assemble together for their common good . . . ."

153.    For the same reasons described above that the Ordinance violates the guarantee of the right to free association and assembly under the First Amendment of the United States Constitution, the Ordinance also violates LifeCare's guarantee to be able "assemble together for their common good" in the TEXAS CONSTITUTION.

154.    Therefore, LifeCare is entitled to the relief requested below.

## CLAIM TEN: VIOLATION OF ARTICLE 1, SECTION 3 OF THE TEXAS CONSTITUTION (EQUAL RIGHTS) AGAINST ALL DEFENDANTS

155.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

156.    Section 3 of Article 1 of the TEXAS CONSTITUTION states that, "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

157.    For the same reasons described above that the Ordinance violates the guarantee of the equal protection of the laws under the Fourteenth Amendment of the United States Constitution, the Ordinance violates the guarantee of equal rights in the Texas Constitution.

158.    Therefore, LifeCare is entitled to the relief requested below

## VI.    DECLARATORY ACTION

159.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

160.    Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration from the Court that the Ordinance violates federal and state law.

## VII.    EQUITABLE INJUNCTIVE RELIEF

161.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

162.    For the reasons describe above, Lifecare is entitled to a preliminary injunction enjoining the Defendants' enforcement of the Ordinance against it because: (1) there is  "a substantial likelihood" that LifeCare will enjoy "success on the merits", (2) LifeCare's loss of "First Amendment Freedoms . . . constitutes irreparable injury" if the injunction is not issued (quoting *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976), (3) the irreparable injury to LifeCare "if the injunction is denied outweighs any harm that will result if the injunction is granted," and (4) "the grant of such an  injunction will not disserve the public interest."  *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

163.    For the same reasons, described above, LifeCare is also entitled to permanent injunction enjoining Defendant City of Austin, its agents, employees, and all other persons acting in concert with Defendant City of Austin or any of its agents or employees from enforcing the Ordinance against LifeCare.

## VIII.    NOMINAL DAMAGES

164.    LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

165.   Plaintiffs seek nominal damages for Defendants violation of the law as described above.

## IX.   COSTS & ATTORNEYS FEES

166.   LifeCare incorporates and adopts by reference for all purposes each and every allegation in the preceding paragraphs and sections.

167.   LifeCare, as the prevailing party, will seek an award of costs and attorneys fees against Defendant pursuant but not limited to 42 U.S.C. § 1988 and Tex. Civ. Prac. & Rem. Code § 110.005(a)(4).

## X.   PRAYER FOR RELIEF

168.   WHEREFORE, LifeCare respectfully requests an Order and Judgment from this Court:

(a)   Declaring the Ordinance unconstitutional on its face and/or as-applied to LifeCare;

(b)   Entering preliminary and permanent injunctions against enforcement of the Ordinance;

(c)   Awarding LifeCare nominal damages for the existing violation of its rights under the Ordinance;

(d)   Awarding LifeCare its costs of the litigation, including reasonable attorneys' fees and expenses under 42 U.S.C. § 1988 and under the Texas Religious Freedom Restoration Act;

(e)   Awarding any and all other relief the Court deems just and proper.

Dated this 5th Day of October, 2011

Respectfully submitted,

OF COUNSEL:

Professor Mark L. Rienzi
D.C. Bar No. 494336
COLUMBUS SCHOOL OF LAW
THE CATHOLIC UNIV. OF AMERICA
620 Michigan Avenue, N.E.
Washington, D.C. 20064
Telephone: (202) 319-4979

Gregory R. Terra, Texas Bar No 24042017
Stephen D. Casey, Texas Bar No. 24065015
TEXAS CENTER FOR DEFENSE OF LIFE
501 South Austin Avenue, Suite 1130
Georgetown, Texas 78626
Telephone: (512) 763-9068
Fax:  (512) 692-2878
gterra@yahoo.com
stephen.casey.law@gmail.com

Samuel B. Casey, Cal. Bar. No, 76022
David B. Waxman, Texas Bar No. 24070817
JUBILEE CAMPAIGN-LAWOF CAMPAIGN-LAWOF LIFE PROJECT
801 G. Street, N.W., Suite 521
Washington, D.C. 20001
Telephone: (202) 586-5652
Fax: (703) 349-7323
sbcasey@lawoflifeproject.org
dbwaxman@lawoflifeproject.org

Matthew S. Bowman*
D.C. Bar No. 993261
ALLIANCE DEFENSE FUND
801 G. Street, N.W., Suite 509
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: 202-347-3622
mbowman@telladf.org

*Application for admission *pro hac vice* pending

ATTORNEYS FOR PLAINTIFF

## VERIFICATION OF COMPLAINT

I, PAMELA COBERN, hereby declare that I am the chief executive officer and executive director of Austin LifeCare, the plaintiff in this action. I have read the foregoing VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF and hereby declare and verify under penalty of perjury that the factual allegations contained in the foregoing Complaint are known by me to be true and correct.

Executed in Austin, Texas, on October 5, 2011.

Pamela Cobern, *CEO & Executive Director*
Plaintiff AUSTIN LIFE CARE